## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSMAN MOHAMED OSMAN EL TAYIEB, | |
| *Petitioner*, | |
| v. | Civil Action No. 22-1857 (RDM) |
| ALEJANDRO N. MAYORKAS, *Secretary of Homeland Security*, *et al.*, | |
| *Respondents*. | |

## <u>MEMORANDUM OPINION</u>

Although the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, contains an intricate array of jurisdiction-limiting provisions, judicial review of denials of applications for naturalization is de novo—both on the law and the facts.  8 U.S.C. § 1421(c).  Here, Petitioner Osman Mohamed Osman El Tayieb ("El Tayieb") brings this action pursuant to Section 1421, and he asks the Court to issue an order directing the U.S. Citizenship and Immigration Services ("USCIS") to grant his application for naturalization.

The case, however, presents two twists on the Court's otherwise broad authority to review USCIS decisions denying applications for naturalization.  First, El Tayieb previously challenged the USCIS's denial of his prior application for naturalization, and the U.S. District Court for the Eastern District of Virginia granted summary judgment in favor of the USCIS.  Although El Tayieb was free to file a renewed application for naturalization, his new application does not divest the earlier judicial decision of all preclusive effect.  Second, El Tayieb's second naturalization application (the one at issue here) requested that the USCIS grant a retroactive, discretionary waiver of one of the requirements for adjustment of status to a lawful permanent

1

resident—namely, that the applicant not willfully misrepresent a material fact in seeking to procure a visa or admission into the United States or other benefit under the INA—and a separate provision of the INA divests federal district courts of jurisdiction to review decisions that are committed by statute to the discretion of the USCIS.

Relying on these limitations, Respondents—the Secretary of Homeland Security, the Director of the USCIS, and two other USCIS officials—move to dismiss El Tayieb's petition for judicial review of the USCIS's denial of his second application for naturalization.  Dkt. 11.  For the reasons explained below, the Court agrees and will **GRANT** Respondents' motion and will **DISMISS** the petition.

## I.  BACKGROUND

For purposes of resolving Respondents' motion to dismiss, the Court will accept the factual allegations contained in the petition as true, will take judicial notice of the earlier decision issued by the U.S. District Court for the Eastern District of Virginia, and will consider the administrative materials attached to (and incorporated into) the petition.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006); *EEOC v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624 (D.C. Cir. 1997); *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 24 (D.D.C. 2020).  For present purposes, moreover, the parties do not dispute the following facts:

El Tayieb is a "native and citizen of Sudan."  Dkt. 1 at 3 (Pet. ¶ 4).  In 1998, he left Sudan and started working in Saudi Arabia.  Dkt. 1-3 at 2; *see also* Memorandum Opinion and Order, Dkt. 30 at 1, *El Tayieb v. Taylor*, No. 16-cv-1206 (E.D. Va., June 26, 2017) (hereinafter "*El Tayieb I*") (attached to Petition as Dkt. 1-10).  In 2000, however, El Tayieb's sponsor in Saudi Arabia told him that he could no longer employ him, prompting El Tayieb to seek a visa to

travel to the United States.  *Id.* at 2–3; *see also* Dkt. 1-3 at 2.  After El Tayieb's first two asylum

applications were denied by a consular officer in Saudi Arabia, El Tayieb met with an employee

of a Saudi princess, al Johara Bint Fahd bin Mohamad, who offered to assist him in obtaining a

visa in exchange for a substantial payment.  *El Tayieb I* at 2 (Dkt. 1-10 at 3); *see also* Dkt. 1-3 at

2–3.  Although El Tayieb never intended to work for the princess, he applied for and received a

B-1 business visa based on the false representation that he would "accompany employer al

Johara Bint Fahd bin Mohamad" to the United States.  Dkt. 1-3 at 3; *see also El Tayieb I* at 2

(Dkt. 1-10 at 3).  El Tayieb was admitted to the United States on February 2, 2001, based on that

B-1 visa but later admitted that his "intention at that time was to remain in the United States and

have a life" here.  Dkt. 1-3 at 3; *see also El Tayieb I* at 2 (Dkt. 1-10 at 3).

On or about October 5, 2001, El Tayieb applied for asylum in the United States.  Dkt. 1-3

at 3; *but cf.* Dkt. 1-9 at 7 (asylum application signed October 15, 2001).  On his asylum

application, El Tayieb made the following representations regarding his application for the B-1

visa:

> In the year 2000, my sponsor told me that the Saudi government policy forced
> his hand[,] and he was not going to renew my contract with him.  He asked me
> to leave [the Kingdom of Saudi Arabia ("KSA")].  At that point, I knew that I
> had to leave KSA.  I desperately tried to leave KSA for the US to seek asylum,
> however, I was twice rejected.  Finally, an employee for a Saudi Princess, Johara
> bint Fahd bin Mohamad, told me that he would help me for money[,] and I
> arrived [in the United States] on February 2, 2001.

Dkt. 1-9 at 11.  On February 7, 2002, El Tayieb was granted asylum.  Dkt. 1 at 3–4 (Pet. ¶ 9);

Dkt. 1-8 at 1.

Then, on February 6, 2003, El Tayieb submitted an I-485 Application to Register

Permanent Residence.  *See* Dkt. 1 at 4 (Pet. ¶ 9); Dkt. 1-7.  On that application, he answered,

"No," to the following question:  "[H]ave you, by fraud or willful misrepresentation of a material

fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit?"  Dkt. 1-7 at 3 (Question 10).  In general, "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under" the INA "is inadmissible," 8 U.S.C. § 1182(a)(6)(C)(i), and only an asylee who "is admissible (except as otherwise provided under [the waiver provision]) as an immigrant . . . at the time of examination for adjustment" is eligible to adjust to lawful permanent resident status, *id.* § 1159(b)(5).  At the time he applied for permanent residency, El Tayieb did not seek a waiver of inadmissibility.  Dkt. 1 at 4 (Pet. ¶ 10).  On February 27, 2005, the U.S. government nonetheless granted his application, and he became a lawful permanent resident.  *Id.* (Pet. ¶ 9).

Five years later, El Tayieb applied to become a naturalized U.S. citizen.  *See id.* (Pet. ¶ 11) (alleging he applied for naturalization on February 26, 2010); *but cf.* Dkt. 1-5 at 9 (listing December 3, 2009, as the date on which he filed his application and February 26, 2010, as the date on which he appeared for his naturalization interview).  On February 23, 2011, approximately a year later and while his application was still pending, the USCIS issued a notice of intent to rescind his lawful permanent resident status, Dkt. 1-5, and the agency, accordingly, held his naturalization application in abeyance, Dkt. 1 at 4 (Pet. ¶ 11).  The notice pointed to several "discrepanc[ies] regarding [El Tayieb's] date of birth, marital status, and travel to Sudan."  *Id.* (Pet. ¶ 12).  Almost four years later, an Immigration Judge issued a decision finding that the USCIS had failed to carry its burden of establishing "by clear, convincing, and unequivocal evidence" that El Tayieb was ineligible for adjustment of status to a lawful

permanent resident, Dkt. 1-6 at 2, and the Immigration Judge, accordingly, declined to rescind El Tayieb's status as a lawful permanent resident, *id.* at 11.

Nonetheless, on November 18, 2015, the USCIS denied El Tayieb's naturalization application, Dkt. 1 at 5 (Pet. ¶ 13); *see also* Dkt. 1-11 at 1, and, on May 31, 2016, the USCIS reaffirmed that denial after a hearing, Dkt. 1-11 at 1–2. In reaffirming its decision, the USCIS explained that the agency initially rejected El Tayieb's application (1) because he "misrepresented multiple material facts" on both his I-589 asylum application and his I-485 permanent residency application, and (2) because he "obtained . . . admission into the U.S. by willfully and knowingly misrepresenting [himself] to be an employee of a Saudi Arabian princess, [a]l Johara Bint Fahd Bin Mohamad, . . . on the visa page of [his] non-immigrant visa." *Id.* at 1. "Due to these misrepresentations, [the] USCIS found [El Tayieb] inadmissible under" 8 U.S.C. § 1182(a)(6)(C)(i) "at the time [that his] status was adjusted under" 8 U.S.C. § 1159(b) "on February 27, 2006," and further found that he had failed to "request the required waiver of inadmissibility at the time of [his] adjustment of status." *Id.* at 1. As a result, the agency concluded that El Tayieb was "unable to demonstrate that [he] met all of the requirements for naturalization[,] . . . including the requirement of having been lawfully admitted for permanent residence." *Id.*

El Tayieb requested a hearing on the denial of his application, *see* Dkt. 1-4, and the USCIS considered "extensive testimony . . . regarding how [he] initially entered the U.S." and about his visa application. Dkt. 1-11 at 2. Among other things, El Tayieb admitted that he paid an employee of the Saudi Arabian princess "approximately 15,000 Riyal" (about $4,000) for a U.S. visa. *Id.* The visa falsely stated that El Tayieb was the princess' employee even though he was "never employed by this person and [he] never intended to be employed by this person," and

it stated that he would be a temporary visitor even though he "intended to permanently live in the U.S." *Id.* El Tayieb also acknowledged that he had provided a false birth certificate to obtain a Sudanese passport when fleeing Sudan, *id.* at 3, and that the "dates listed for [his] education on [his] asylum application were incorrect," *id.* at 3–4.

Although El Tayieb argued that the misstatements were necessary to escape political persecution in Sudan or "were made either by [his] attorney or upon the advice of [his] attorney," the USCIS was unpersuaded. *Id.* at 4. As the agency noted, El Tayieb "confirmed [his] signature on the asylum application and confirmed that [he] did attend an interview regarding [his] asylum claim with an interpreter present for the interview." *Id.* In addition, El Tayieb "confirmed the date of birth and [his] educational history at [his] asylum interview," and, as the USCIS further explained, "the red checks on the asylum application indicate that the asylum officer went over [El Tayieb's] asylum application with [him]." *Id.* Indeed, "the asylum application specifically indicates that [El Tayieb] corrected [his] starting date at Gezira University from July of 1995 to March of 1995," *id.*, even though El Tayieb later acknowledged that he "did not actually attend Gezira University as a student in 1995," *id.* at 3.

The USCIS further found that when El Tayieb "applied to adjust status to become a permanent resident, [he] had the opportunity and obligation to correct the[se] misrepresentations," but did not do so. *Id.* at 4. To the contrary, when asked on the adjustment of status application whether he "had ever sought to procure, or had procured, an immigration benefit by fraud or willful misrepresentation," El Tayieb "indicated that [he] had not." *Id.* The USCIS, accordingly, found "[b]ased upon the record and [El Tayieb's] testimony" that he made "misrepresentations . . . regarding [his] visitor visa," asylum application, and adjustment of status application "in order to procure an immigration benefit." *Id.* Those misrepresentations, in turn,

rendered him "inadmissible at the time of [his] adjustment" of status and thus ineligible for
naturalization.  *Id.* at 4–5.

Of particular relevance here, El Tayieb made two arguments in response to these
findings.  First, he argued that "even if [he] were inadmissible to the U.S. at the time of [his]
adjustment" of status, that "inadmissibility was likely waived by [the] USCIS at the time of
adjustment."  *Id.* at 5.  The USCIS disagreed, noting that the record contains "no indication that
[El Tayieb] ever applied for, or [was] granted" as matter of the agency's "discretion, a waiver of
inadmissibility prior to adjusting status to that of a permanent resident on February 27, 2006."
*Id.*  Any suggestion that the agency implicitly granted such a waiver, moreover, was foreclosed
due to El Tayieb's failure to disclose the prior misrepresentations at the time he applied for
adjustment of status.  *Id.*  As the agency wrote:  "By not revealing [his] inadmissibility,
continuing the same misrepresentations [contained in his] asylum application, and by not
requesting a waiver by filing Form I-602, [El Tayieb] precluded [the] USCIS from making a
discretionary determination on whether [he] would have merited such a waiver."  *Id.*

Second, El Tayieb's counsel argued that "even if a waiver had not been granted at [that]
time," the USCIS could grant a waiver "*nunc pro tunc*, at the naturalization stage, and [El
Tayieb] would therefore be eligible to naturalize."  *Id.*  As to this argument, the USCIS wrote as
follows:

> [W]hile the brief submitted by your attorney discusses the availability of *nunc
> pro tunc* waivers of inadmissibility in the context of proceedings before an
> Immigration Judge, none of the case law cited in the brief appears relevant in
> the context of naturalization[,] and no statutory or case law authority has been
> offered that supports *nunc pro tunc* waiver availability that is applicable to
> determine eligibility for naturalization.  Indeed, the Board of Immigration
> Appeals has expressly found that a waiver of inadmissibility is not available on
> a stand-alone basis without a concurrently filed application for adjustment of
> status.  *See Matter of Rivas*, 26 I&N Dec. 130 (BIA 2013).  Therefore, you were
> not lawfully admitted for permanent residence at the time of your adjustment of

status and the defect in your adjustment may not be retroactively waived now.
*See Nesarl v. Taylor*, 806 F. Supp. 2d 848 (E.D. Va. 2011).

*Id.*

Finally, the USCIS found that El Tayieb was also ineligible for naturalization because he was "unable to show the prerequisite good moral character." *Id.* at 6 (citing INA § 101(f)(3) (codified at 8 U.S.C. § 1101(f)(3)); INA § 316(a)(3) (codified at 8 U.S.C. § 1427(a)(3)); 8 C.F.R. 316.10(b)(3)(iii)).  El Tayieb had acknowledged bribing Sudanese public officials at least twice in order to visit his family in Sudan, which the USCIS classified as acts of "not only criminality, but morally turpitudinous conduct" without "sufficient extenuating circumstances to excuse" them. *Id.*[1]

On September 22, 2016, El Tayieb filed a petition for judicial view of the USCIS's decision in the U.S. District Court for the Eastern District of Virginia.  Dkt. 1-3 at 4.  On June 26, 2017, the court (Trenga, J.) granted the USCIS's motion for summary judgment and dismissed El Tayieb's petition.  *El Tayieb I* at 1 (Dkt. 1-10 at 2).  In particular, after holding a hearing on the motion and considering "de novo [El Tayieb's] application for naturalization," Judge Trenga found that El Tayieb "was never lawfully admitted for permanent residence" and that the USCIS, accordingly, "properly denied" his "application for citizenship." *Id.*  Among other things, Judge Trenga found that El Tayieb "knowingly and explicitly lied" on his application for a B-1 visa "when he stated that he would be accompanying his 'employer al Johara bint Fahd bin Moham[a]d' into the United States for business purposes." *Id.* at 5 (Dkt. 1-10 at 6).  And he further found that this "misrepresentation was material" and that because El Tayieb "sought to procure a visa through willful misrepresentation of the circumstances and

---

[1] In the proceedings in the Eastern District of Virginia and thereafter, Respondents declined to rely on the good-moral-character grounds for denial, and, instead, relied only on the B-1 visa misrepresentation.  *See El Tayieb* at 3 n.3 (Dkt. 1-10 at 4 n.3).

reasons for his visit, [he] was inadmissible at the time of his examination for adjustment" of status.  *Id.*  Nor was Judge Trenga persuaded that El Tayieb's misstatements were justified or irrelevant, particularly since El Tayieb "never applied for a waiver" and, indeed, made further "misrepresentations in connection with [his] application for naturalization."  *Id.* at 6 (Dkt. 1-10 at 7).

The parties agreed that El Tayieb never filed a request for waiver of inadmissibility pursuant to 8 U.S.C. § 1159(c), but El Tayieb argued that the USCIS granted his application for adjustment of status to lawful permanent resident "'with full knowledge of [his] misrepresentation'" and thus implicitly "'waived his inadmissibility . . . when [it] adjusted" his status.  *Id.* at 7 (Dkt. 1-10 at 8).  In support of that argument, El Tayieb pointed to a October 31, 2005, memorandum from then USCIS Acting Director of Domestic Operation, Michael Aytes, Dkt. 1-12 (hereinafter "Aytes Memo"), which advised that "'[i]n certain instances, [the] USCIS has determined that submission of [a formal waiver request] is not required" and that, under those circumstances, "'[t]he adjudicator should indicate that the waiver has been granted by annotating and initialing the "Remarks" section of the'" application for adjustment of status, indicating "'that the inadmissibility violation has been waived.'"  *El Tayieb I* at 7 (Dkt. 1-10 at 8) (quoting Aytes Memo); *see also* Dkt. 1-12 at 4–5.

Judge Trenga was unpersuaded for four reasons.  First, he observed that the requirement that an applicant for naturalization be "lawfully admitted as a permanent resident" is a substantive legal requirement rather than a "'mere procedural regularity.'"  *El Tayieb I* at 7 (Dkt. 1-10 at 8) (citation omitted).  Second, he noted that the Aytes Memo did not take effect until months after El Tayieb's application for adjustment of status was granted.  *Id.* at 8 (Dkt. 1-10 at 9).  Third, he observed that El Tayieb's application contained "no annotation indicating that any

waiver was granted." *Id.* Finally, he explained that the burden of establishing lawful admission rests on the petitioner seeking naturalization and that this burden includes demonstrating that any "'otherwise operable prerequisites to such lawful admission'" have been waived. *Id.* (citation omitted).

Judge Trenga also rejected El Tayieb's contention that he had retracted his misrepresentation, thereby obviating the need for a waiver. As Judge Trenga explained, El Tayieb did not retract his misrepresentation at the "'first available opportunity'" or in the "'same proceeding'"—both of which are prerequisites to a valid retraction—and, in any event, "he later repeated the prior misstatement . . . when he applied for permanent residence by affirming under penalty of perjury that he had never 'by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit.'" *Id.* at 9–10 (citation omitted) (Dkt. 1-10 at 10–11). And, beyond those difficulties, Judge Trenga concluded that even when El Tayieb made the disclosures at issue during his asylum hearing, "[h]e may have reasonably believed that the USCIS would investigate his background . . . in a more thorough manner than a border agent at the airport would do upon seeing a valid, though unlawfully obtained, B-1 visa" and that he faced an imminent risk of exposure. *Id.* at 10 (Dkt. 1-10 at 11).

Finally, Judge Trenga rejected El Tayieb's contention that, having granted his application for adjustment of status, the USCIS was barred by principles of res judicata from arguing that he was not lawfully admitted. As Judge Trenga explained, El Tayieb's argument was "explicitly foreclosed by the language of the naturalization statute," which provides:

> [T]he findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this chapter, *shall not be deemed binding in any way* upon the Attorney General with respect to the

question of whether such person has established his eligibility for naturalization
as required by this subchapter.

8 U.S.C. § 1429 (emphasis added); *see also El Tayieb I* at 11 (Dkt. 1-10 at 12).  As a result, the

"USCIS's prior grant of permanent residence to El [T]ayieb [did] not insulate him from a later

denial of his naturalization application."  *El Tayieb I* at 12 (Dkt. 1-10 at 13).

On September 24, 2019, El Tayieb filed a second naturalization application, which is the

application at issue in this case.  Dkt. 1 at 5 (Pet. ¶ 15); *see also* Dkt. 1-2.  And, as an addendum

to this application, he filed a Form I-602, Application by Refugee for Waiver of Grounds of

Excludability and requested that the USCIS grant him that waiver *nunc pro tunc*.  Dkt. 1-2 at 21–

26.  On May 27, 2021, the USCIS denied this second application.  Dkt. 1-1.  The agency

determined, as it had before, that El Tayieb had "adjusted [his] status [to lawful permanent

resident] in error and [that he was,] therefore, not lawfully admitted for permanent residence."

*Id.* at 2.  The USCIS once again pointed to 8 U.S.C. § 1182(a)(6)(C)(i), which provides that

"[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks of procure (or has

sought to procure or has procured) a visa, other documentation, or admission into the United

States or other benefit provided by this Act is inadmissible," and to 8 U.S.C. § 1427(a), which

provides that "[n]o person . . . shall be naturalized unless" he "has resided continuously" in the

United States as a lawful permanent resident for the five years preceding his application to

naturalize.  And, the agency once again noted that, although an asylee may apply for a waiver of

inadmissibility under 8 U.S.C. § 1159(c) "for humanitarian purposes" or "when it is otherwise in

the public interest," he must do so "at the time" he applies "for adjudgment of status," which El

Tayieb failed to do.  Dkt. 1-1 at 2.

Of particular relevance here, the USCIS also rejected El Tayieb's request for a *nunc pro

tunc* waiver.  As the USCIS explained, the Board of Immigration Appeals ("BIA") had

11

previously held in an analogous case (involving a request for a waiver of otherwise disqualifying criminal conduct) that a waiver request "must be concurrently filed with the adjustment of status application," Dkt. 1-3 at 4, and is unavailable on a "stand-alone basis," *id.* (citing *Matter of Giovanny Rivas*, 26 I&N Dec. 130, 131 (Dec. 20, 2013)).  The Court of Appeals for the Eleventh Circuit upheld that BIA decision on appeal.  *Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1326 (11th Cir. 2014).

Finally, the USCIS concluded that El Tayieb's reliance on *Robleto-Pastora v. Holder*, 591 F.3d 1051 (9th Cir. 2010), was misplaced.  The agency explained:

> You included with your submission of Form I-602 a legal memorandum, citing *Cf. Roblet[o]-Pastora v. Holder*, 591 F.3d 1051 (9th Cir, 2010), in which the appellate court held that, since it was unclear whether the defendant was afforded the opportunity to apply for a waiver under [8 U.S.C. § 1159(c)], the immigration judge (IJ) should have informed the defendant of his potential eligibility for such a waiver *nun pro tunc* and explored the issue with him.
>
> In this case, however, while you are requesting a waiver of inadmissibility under [8 U.S.C. § 1182(i)], it still stands that had you informed USCIS of the grounds for inadmissibility at the time of your application for adjustment of status, USCIS would have raised Form I-602 as an available option to waive such inadmissibility.  As stated above, your failure to reveal the misrepresentation either on your Form I-485 or during your adjustment of status interview prevented a line of questioning during your interview.  If USCIS had been made aware that you were inadmissible at the time, the Service would have requested further documentation from you to address this inadmissibility.

Dkt. 1-1 at 2–3.  Because El Tayieb had failed to "demonstrate[] that [he] ha[d] been lawfully admitted for permanent residence," the USCIS concluded that he was "therefore . . . ineligible for naturalization."  *Id.* at 3.

On June 24, 2021, El Tayieb filed a Form N-336 requesting a hearing on this decision.  Dkt. 1 at 6 (Pet. ¶ 19).  He pressed two principal arguments.  He first argued that the USCIS erred in relying on *Matter of Giovanny Rivas*, 26 I&N Dec., because that decision applied a rule applicable to waivers of inadmissibility at the time of adjustment of status under 8 U.S.C.

§ 1255, while El Tayieb adjusted his status pursuant to 8 U.S.C. § 1159, which applies to asylees.  Dkt. 1-3 at 4.  Second, he argued that his inadmissibility was implicitly waived because he "disclosed [his] misrepresentation to the adjudicating Officers, and" they nonetheless granted his applications for "asylum and adjustment [of] status."  *Id.*

Unsurprisingly, the USCIS was once again unpersuaded.  In denying his request after a review hearing, the agency noted that the USCIS Policy Manual provides that a legal permanent resident "admission or adjustment of status that was unlawful when it occurred cannot be cured by an applicant's submission of an Application for Waiver of Grounds of Inadmissibility [as applicable to those who adjust their status under 8 U.S.C. § 1255] or an Application by Refugee for Waiver of Inadmissibility Grounds [as applicable to those who adjust under 8 U.S.C. § 1159] during a naturalization proceeding."  Dkt. 1-3 at 5 (quoting USCIS Policy Manual vol. 12, pt. D, ch. 2).  That is, the prohibition on *nunc pro tunc* waivers applies to refugees who, like El Tayieb, adjust their status pursuant to 8 U.S.C. § 1159.

Nor was the agency persuaded by El Tayieb's (previously rejected) argument that his "inadmissibility was likely waived by USCIS at the time of adjustment," even though he did not file the required form requesting that relief.  *Id.*  In support of this argument, El Tayieb invoked the same Aytes Memo that Judge Trenga addressed in his opinion.  Dkt. 1-3 at 5.  Recall that the Aytes Memo provides that "[i]n certain instances, USCIS has determined that submission of [the form] is not required," although "[u]nder such circumstances, '[t]he adjudicator should indicate that the waiver has been granted by annotating and initialing the "Remarks" section of the [relevant document indicating] that the inadmissibility has been waived.'"  *Id.* (quoting Aytes Memo).  The USCIS concluded that El Tayieb's argument suffered from the same two difficulties identified in Judge Trenga's opinion: first, the Aytes Memo did not take effect until

more than eight months after El Tayieb adjusted status, and, second, the "adjudicator" did not make the required annotation. *Id.* The USCIS, accordingly, "reaffirm[ed] the decision" denying El Tayieb's application for naturalization. *Id.*

On June 29, 2022, El Tayieb filed the pending Petition for Review in this Court. Dkt. 1. He stresses that he "is **not** seeking to adjust his status to a lawful permanent resident but rather to cure his defective status through a *nunc pro tunc* waiver to apply the waiver to the time of his prior adjustment of status application." Dkt 13-1 at 7 (emphasis in original). Respondents, in turn, have moved to dismiss the petition for lack of jurisdiction, for failure to state a claim, and on grounds of res judicata. Dkt. 11.

## II. LEGAL STANDARD

In responding to a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff—or petitioner—bears the burden of establishing that the court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, the respondents claim that the petitioner has failed to plead facts sufficient to establish the court's jurisdiction—that is, where the respondents raise a "facial" challenge to subject-matter jurisdiction, *see Hamilton v. United States*, 502 F. Supp. 3d 266, 272 (D.D.C. 2020)—the court may "dispose of" the motion "on the complaint standing alone." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). In so doing, the court must "assume the truth of all material factual allegations in the complaint," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), and must "grant[] [the] [petitioner] the benefit of all [reasonable] inferences that can be derived from the facts alleged," *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks and citation omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir 1994)). Because federal courts are courts of limited subject-matter jurisdiction and "possess only that

power authorized by the Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), a petitioner must allege facts that, if accepted as true, would establish that the Court has authority to resolve each claim at issue.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Although both types of preclusion are affirmative defenses, they "may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint," *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *see also Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011); *Felter v. Salazar*, 679 F. Supp. 2d 1, 4 (D.D.C. 2010), or when "all relevant facts are shown by the court's own records," *Ponder v. Chase Home Fin., LLC*, 865 F. Supp. 2d 13, 16 n.2 (D.D.C. 2012) (quoting *Camp v. Kollen*, 567 F. Supp. 2d 170, 172 n.3 (D.D.C. 2008)), or by the "public records from other proceedings," *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008); *see also Lewis*, 777 F. Supp. 2d at 159.

More generally, in resolving a Rule 12(b)(6) motion to dismiss, the Court must take the allegations of fact contained in the Petition as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 675, 678) (alterations in original). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.  ANALYSIS

### A.    Res Judicata

The Court's starts Respondents' res judicata defense, both because it is—with only minor exception—unopposed and because addressing that defense at the outset narrows and defines the issues that remain for this Court to resolve.  Moreover, although courts must ordinarily (if not invariably) address jurisdiction before the merits, Respondents' jurisdictional and non-jurisdictional defenses do not overlap.  Respondents' preclusion defense narrows the scope of the case to a single issue—that is, whether the USCIS erred in declining to grant a waiver of inadmissibility *nunc pro tunc* to the date of adjustment—and Respondents then argue that this Court is without jurisdiction to adjudicate that remaining issue.

As Respondents note, El Tayieb's petition in this Court alleges that the USCIS "impermissibly found that [he] was not lawfully admitted for permanent resident status," Dkt. 1 at 7 (Pet. ¶ 27), and it "requests that the Court conduct a hearing de novo on his Naturalization application pursuant to 8 U.S.C. § 1421(c)," *id.* at 8 (Pet. ¶ 29), and "grant his Naturalization application" or remand the matter to the USCIS, *id.* (Pet. ¶ 30).  In Respondents' view, all but a narrow slice of this claim is barred by res judicata because the parties fully litigated the very same issues in *El Tayieb I*.  Dkt. 11-1 at 17–21.  As explained below, Respondents invoke the incorrect form of preclusion, but their argument is otherwise well taken and, in any event, is not meaningfully opposed.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor*, 553 U.S. at 892.  Here, Respondents

argue that res judicata—or claim preclusion—bars El Tayieb's petition because the U.S. District Court for the Eastern District of Virginia engaged in de novo review of the denial of his first naturalization petition and found that he "cannot meet all the requirements for naturalization, including the requirement of having been lawfully admitted for permanent residence."  Dkt. 11-1 at 19.  As Respondents stress, Judge Trenga (1) found that El Tayieb "made material misrepresentations to obtain his B-1 Visa to come to the United States[] and subsequently indicated on his permanent residency application that he never made a misrepresentation to obtain an immigration benefit" and (2) further found that, although El Tayieb was therefore "inadmissible at the time he applied for permanent residency," he failed to "seek a waiver of inadmissibility at that time."  *Id.*

Claim preclusion applies when there has "been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).  The prior litigation involves the same claims or cause of action when "they share the same 'nucleus of facts,'" *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)), "even if the latter action is predicated on a different legal theory," *Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 62 (D.D.C. 2009).  "Res judicata does not," however, "preclude claims based on facts not yet in existence at the time of the original action."  *Drake*, 291 F.3d at 66.

Issue preclusion, in contrast, "bars successive litigation of 'an issue of fact or law' that '[was] actually litigated and determined by a valid and final judgment, and [that was] essential to the judgment.'"  *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 27 (1980)).  The doctrine promotes "judicial finality," *Yamaha Corp. of Am. v.*

*United States*, 961 F.2d 245, 254 (D.C. Cir. 1992), "conserves judicial resources" and avoids "unnecessary expense to litigants," *Lavergne v. U.S. House of Representatives*, No. 17-cv-793, 2018 WL 4286404, at *5 (D.D.C. Sept. 6, 2018) (three-judge court), and "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions," *Montana v. United States*, 440 U.S. 147, 153–54 (1979).  Issue preclusion applies when (1) "the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case;" (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case;" and (3) "preclusion in the second case [will] not work a basic unfairness to the party bound by the first determination."  *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha*, 961 F.2d at 254).

Although the doctrines serve similar purposes and are premised on similar principles, the Court concludes that Respondents' arguments are best understood as asserting issue—rather than claim—preclusion.  As the Supreme Court has explained:

> Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).  Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  *Id*. at 748–749.

*Taylor*, 553 U.S. at 892.  Here, although the factual predicates for this case and *El Tayieb I* overlap in significant respects, El Tayieb challenges a distinct administrative action in this action.  Following the district court's decision in *El Tayieb I*, El Tayieb filed a new application for naturalization—as he was entitled to do—and the USCIS issued two new decisions denying that new application.  Nor do *El Tayieb I* and this case share "the same nucleus of facts." *Harrison*, 611 F. Supp. 2d at 62.  Most notably, prior to filing his first case in federal district

court, El Tayieb had not asked the USCIS to grant a *nunc pro tunc* waiver of inadmissibility,

while he did so prior to filing this case, and, indeed, his pending claim for relief focuses on the

USCIS's failure to grant that waiver.  And, finally, El Tayieb asserts only a single claim for relief

in this case, and, as Respondents acknowledge, their defense does not posit that his *claim* is

barred, only that he is precluded from relitigating certain legal and factual *issues* that were fully

litigated in *El Tayieb I*.

Although issue preclusion is an affirmative defense that is generally waived if not raised,

*see Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 302 (D.C. Cir. 2015); Fed. R. Civ. P. 8(c),

Respondents' use of the incorrect label is inconsequential for several reasons.  First, substance

matters more than labels, and Respondents clearly argue that El Tayieb is bound by Judge

Trenga's legal conclusions and factual findings in *El Tayieb I*.  They argue, for example, that

Judge Trenga "found that [El Tayieb] was . . . inadmissible at the time he applied for permanent

residency . . . and failed to . . . seek [a] waiver of inadmissibility at that time." Dkt. 11-1 at 19.

Those are facts, moreover, which existed long before the court issued its decision in *El Tayieb I*,

and they are not facts that were subject to change before the present case was filed.  To the extent

those same facts are at issue here, they were previously contested and "submitted for judicial

determination," they were "actually and necessarily determined by a court of competent

jurisdiction in that prior case," and "preclusion in" this case will "not work a basic unfairness to

the party bound by the first determination."  *Martin*, 488 F.3d at 454 (quoting *Yamaha*, 961 F.2d

at 254).

But, ultimately, the question of preclusion is much ado about nothing because, for present

purposes, El Tayieb "does not challenge his inadmissibility," does not "argue [that] he timely

retracted th[e] misrepresentation" that the USCIS relied upon to conclude that he was

inadmissible, Dkt. 13-1 at 12, and does not dispute that he failed to request a waiver of inadmissibility from the USCIS at the time he adjusted status, and, indeed, any time prior to his most recent application for naturalization, *id.* at 4–5.  Nor does he now argue, as he argued in *El Tayieb I*, that he was granted an implicit waiver when the USCIS granted his application to adjust his status to lawful permanent resident.  Accordingly, whether treated as a matter of issue preclusion, abandonment, judicial notice, or pleading, the Court must accept these undisputed facts and uncontested questions of law.  As a result, the sole question that remains—and the sole question raised by El Tayieb's petition—is whether the USCIS erred in denying his *nunc pro tunc* request for "a discretionary waiver" of inadmissibility "for humanitarian, [family] unity, or public interest purposes."  Dkt. 1 at 7 (Pet. ¶ 27).  That question is unaffected by claim or issue preclusion but faces a significant jurisdictional hurdle.

**B.     Jurisdiction**

The federal district courts have jurisdiction under 8 U.S.C. § 1421(c) to review a decision to deny a naturalization application.  Dkt. 13-1 at 7; *see also* Dkt. 14 at 7.  Section 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5.

8 U.S.C. § 1421(c).  Judicial review is de novo, and the court is required to "make its own findings of fact and conclusions of law and . . ., at the request of the petitioner, [to] conduct a hearing de novo on the application."  *Id.*

For present purposes, a hearing is unnecessary to establish the relevant factual background because the facts—and, indeed, much of the governing law—is undisputed.  All agree (1) that an applicant for naturalization bears the burden of demonstrating that he has

"resided continuously, *after being lawfully admitted for permanent residence*, within the United States for at least five years" prior to filing his naturalization application, 8 U.S.C. § 1427(a) (emphasis added); (2) that an "alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the INA] is inadmissible," 8 U.S.C. § 1182(a)(6)(C)(i); and (3) that, at least for present purposes, the Court is bound by the finding of the USCIS, which was sustained in *El Tayieb I* after a de novo hearing, that El Tayieb was inadmissible on the date of his adjustment of status due to his prior misrepresentations of material fact.

Accordingly, although federal district courts are regularly called upon to determine—de novo—whether an applicant for naturalization was lawfully admitted as a lawful permanent resident, *see*, *e.g.*, *Ampe v. Johnson*, 157 F. Supp. 3d 1 (D.D.C. 2016); *Bertos v. Napolitano*, No. 12-cv-3531, 2013 WL 1435480 (N.D. Cal. 2013); *Obianyo v. U.S.C.I.S. Pennsylvania*, No. 17-cv-1467, 2019 WL 1375798 (D.N.J. 2019); *Htoo v. Sessions*, No. 17-cv-745V, 2018 WL 10781033 (W.D.N.Y. June 28, 2018), *report and recommendation adopted*, No. 17-cv-745, 2020 WL 1226880 (W.D.N.Y. Mar. 13, 2020); *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, No. 13-cv-6711, 2014 WL 6471479 (D.N.J. Nov. 18, 2014), *aff'd*, 828 F.3d 175 (3d Cir. 2016), this is not such a case. The petition in this case, instead, asks the Court to decide whether the USCIS erred when it denied El Tayieb's second application for naturalization on the ground that he was not entitled to seek a *nunc pro tunc* waiver of his inadmissibility concurrent with his application for naturalization and, importantly, after he adjusted status. That question faces a jurisdictional hurdle not addressed in these earlier cases because, as El Tayieb concedes, the waiver that he seeks is "discretionary." Dkt. 1 at 7 (Pet. ¶ 27).

21

A separate provision of the INA strips the Court of whatever jurisdiction it might

otherwise have.  That provision provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).

As El Tayieb argues, Respondents' first effort to invoke 8 U.S.C. § 1252(a)(2)(B) is

unavailing.  Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review

because "no court shall have jurisdiction to review" any decision regarding the granting or denial

of relief under section 1255, which deals with "adjustment of status for permanent residence."

Dkt. 11-1 at 16.  But, as El Tayieb correctly observes, he did not adjust status pursuant to 8

U.S.C. § 1255.  Rather, because he was an asylee, he adjusted status to legal permanent resident

pursuant to 8 U.S.C. § 1159, which is not a section listed in 8 U.S.C. § 1252(a)(2)(B)(i).

Respondents' second and third arguments, however, hit their mark.  Respondents' second

argument does not rely on 8 U.S.C. § 1252(a)(2)(B) but, rather, invokes the Eighth Circuit's

decision in *Al-Saadoon v. Barr*, 973 F.3d 794 (8th Cir. 2020).  In that case, the Eighth Circuit

held that the district court was correct in holding that it "did not have jurisdiction under

§ 1421(c) to review [the] USCIS's denial of [the petitioners'] requests for their lawful permanent

resident status to be reinstated *nunc pro tunc*."  *Id.* at 802.  In *Al-Saadoon*, petitioners argued, as

El Tayieb argues here, that their request "to adjust their status *nunc pro tunc* was a part of their naturalization application" and that the district court, accordingly, "had jurisdiction to review the request" pursuant to 8 U.S.C. § 1421(c).  *Id.* at 800.  There, as here, petitioners had "adjusted to permanent resident status" years earlier.  *Id.* at 798.  The Eighth Circuit was unpersuaded, however, and explained as follows:  "Although being lawfully admitted for permanent residence is a prerequisite to naturalization, *see* 8 U.S.C. § 1429, it is a separate process from naturalization."  *Id.* at 801–02.  It followed, according to the Eighth Circuit, that the district court lacked jurisdiction under 8 U.S.C. § 1421(c) to review the petitioners' "adjustment to permanent resident status *nunc pro tunc* claim as a part of the ultimate naturalization issue."  *Id.* at 802.

El Tayieb, who bears the burden of demonstrating that the Court has jurisdiction, says nothing about the *Al-Saadoon* decision, and he includes only a single sentence in his opposition brief that even arguably responds to the substance of Respondents' argument.  He merely asserts that he "is **not** seeking to adjust his status to a lawful permanent resident but rather to cure his defective status through a *nunc pro tunc* waiver to apply the waiver to the time of his prior adjustment of status application."  Dkt. 13-1 at 7.  But that argument blinks the fact that El Tayieb's naturalization application was denied because he was "inadmissible at the time [he] obtained [his] permanent resident status."  Dkt. 1-3 at 1.  It follows that, whatever words he may employ, he is, in fact, seeking an order that would retroactively alter his status "from "inadmissible" to "admissible," so that he can satisfy the naturalization requirement of residing "continuously, after being lawfully admitted for permanent residence, within the United States for at least five years," 8 U.S.C. § 1427(a).

But, even if there were anything to El Tayieb's argument—or even if he might be able to identify some other cause of action and grant of jurisdiction, such as the Administrative

Procedure Act, 5 U.S.C. § 701 *et seq.*, and 28 U.S.C. § 1331, which he has not done—Respondents' third argument is dispositive. Although Respondents failed to raise this argument until their reply brief, Dkt. 14 at 10–11, the Court has an independent duty to ensure that it has jurisdiction, and El Tayieb has had ample opportunity to seek leave to file a sur-reply, which he has not done. Respondents' third argument rests on subsection (ii) of 8 U.S.C. § 1252(a)(2)(B), which declares in sweeping terms that "[n]otwithstanding *any other* provision of law (statutory or nonstatutory)," no court shall have jurisdiction to review "*any other* decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* § 1252(a)(2)(B)(ii) (emphasis added).[2] And, here, as El Tayieb acknowledges, Dkt. 1 at 7 (Pet. ¶ 27), the decision whether to grant a *nunc pro tunc* waiver "is a quintessentially discretionary agency action," *Al-Saadoon*, 973 F.3d at 802 (addressing the analogous waiver provision in 8 U.S.C. § 1255(i)); *see also Peulic v. Garland*, 22 F.4th 340, 346 (1st Cir. 2022); *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1325 (11th Cir. 2021).[3] "That discretion," moreover, "carries [with it] the power to establish reasonable standards for how that discretion should be exercised." *Peulic*, 22 F.4th at 347.

---

[2] Although sweeping, 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of every discretionary decision. It does not, for example, apply to discretion granted under a regulation. It does, however, bar review where "Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247, 254 (2010).

[3] *Cf. iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 67 (D.C. Cir. 2021) (holding that 8 U.S.C. § 1155, which provides that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154," falls under § 1252(a)(2)(B)(ii)); *Zhu v. Gonzales*, 411 F.3d 292, 296 (D.C. Cir. 2005) (holding that 8 U.S.C. § 1153(b)(2)(B)(i), which provides that "the Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirements" of § 1153(b)(2)(A), falls under § 1252(a)(2)(B)(ii)).

To be sure, as Respondents acknowledge, Dkt. 14 at 11, the statute explicitly provides that:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).  But this Court is not a court of appeals, and thus this provision, even if otherwise applicable, offers El Tayieb no assistance for present purposes.  And because it is not this Court's role to determine if, and when, a petition for review may be filed in the courts of appeals, the Court expresses no view on whether 8 U.S.C. § 1252(a)(2)(D) might provide El Tayieb with an avenue for raising any legal challenge he may have to the USCIS's decisions.

It is possible that El Tayieb has additional jurisdictional theories at his disposal, but he has not raised those theories—if any—and it is his burden to show that this Court has jurisdiction to consider his challenge to the USCIS's decision declining to grant him a *nunc pro tunc* waiver of inadmissibility.  The Court will, accordingly, dismiss that claim for lack of statutory jurisdiction.

## CONCLUSION

For the reasons explained above, the Court will **GRANT** Respondents' motion to dismiss, Dkt. 11, and will **DISMISS** El Tayieb's petition for lack of jurisdiction to the extent it seeks review of the USCIS's decision declining to grant him a *nunc pro tunc* waiver of

inadmissibility, and will **DISMISS** the remainder of El Tayieb's petition, if any, for failure to state a claim.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: July 9, 2024